Arun Subramanian, US District Judge
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 15A
New York, NY 10007
(212) 805-0238
subramanianNYSDChambers@nysd.uscourts.g

December 10, 2024

<u>*Via ECF*</u>

Re: 1:24-CV-02246 *Kwoka, et al v. D'Angelo*

Dear Honorable Judge Subramanian,

I write in response to Mr. Gebski's letter of December 5, 2024; and in support of my application to file a motion seeking to hold Plaintiffs in contempt for failing to comply with Your Honor's Order of September 11, 2024, and to Compel Plaintiffs to comply with duly served discovery demands; and for sanctions to recompense Defendant for the attorney fees that she incurred solely because of Plaintiffs' contumacious disregard of the law.

## MOTION FOR CONTEMPT

On September 11, 2024, Your Honor issued an Order providing that Plaintiffs should send to D'Angelo's accountant "true and accurate explanations for all expenses incurred by Kwoka." The Order further provided that this information should be produced by "Thursday, September 12, 2024, before 3:00PM." This information STILL has not been provided, despite our numerous requests. Defendant now asks this Court to hold Plaintiffs in contempt because of their flagrant and contumacious failure to comply with a judicial order.

Please see the accompanying Declaration of Lenard S. Elias, Defendant's accountant, detailing his numerous requests for specific vendor-generated invoices.

Elias's requests were met with constant stonewalling and delays; and a refusal to send the discrete documents requested. Elias was only permitted to go through the entire annual QuickBooks, to search for the invoices he needed. (He was assured by Plaintiffs that these invoices were in the QuickBooks). But at the

conclusion of this arduous and painstaking task, Elias found that the invoices which he had requested, were **not** in the QuickBooks.

The only invoices in the QuickBooks were those generated by Mark Kwoka himself. Indeed, he wrote them *on Esme stationary!*

Elias needed invoices <u>from the vendors</u> themselves, giving proof of what had to be paid (and for what); not just Kwoka's unsupported and unsworn statements of expense.

Attached as **Exhibit A**, are copies of TEN separate requests that we made for these vendor-generated invoices, dated September 26, 2024; September 30, 2024; October 9, 2024; October 19, 2024; October 25, 2024; November 8, 2024; November 9, 2024; November 12, 2024; November 21, 2024; and November 24, 2024.

These emails make clear that the provision of QuickBooks was not sufficient; and that "we needed the actual invoices from the China vendors" (see emails October 25, 2024, and November 8, 2024).

But most disturbing is Mr. Gebski's email to me of December 3, 2024, saying that he has already provided everything (**Exhibit B**). Indeed, Mr. Gebski's letter to the Court of December 5, 2024 repeats: "all financial information was already produced."

It's clear that absent Court intervention and coercion, that Plaintiffs will never produce the vendor-generated invoices that they have been ordered to produce.

## **MOTION TO COMPEL**

Mr. Gebski has come up with every excuse in the book to prevent providing any documents. First Mr. Kwoka had just returned from a three-month trip; then Mr. Kowka's wife had surgery on her elbow; then Mr. Gebski was on an "unexpected" trial and needed delay for that; then there was a flood in Mr. Gebski's apartment (which I later found out had occurred well before the trial); then Mr. Gebski was moving his family cross-country and all of his files were boxed up; and then Mr. Gebski was going to quit his representation, and obtain a delay while the Plaintiff obtained new counsel.

I had told Mr. Gebski that he could pick any production date that he was comfortable with, as long as he stuck to it. He selected November 12; and of course, he has not stuck to it… not even close.

Along the way from November 12 until today, there have been a half-dozen or more of requests for additional extensions of "just over the weekend," or "just two more days," and on and on, but the promised productions have never arrived.

The only thing that did arrive was a dump of 15,000 documents, which Gebski acknowledged were "mostly non-responsive," which were in no way cross-referenced to any of our Demands.

On September 13, 2024, I sent our first request for documents, asking for 35 different categories of documents. On September 17, 2024, I served my second set of document requests, covering 31 additional categories.

To date, about 3 months later, I have not received a single solitary document in response to any of these 66 document demands.

## REQUESTS FOR EXTENSIONS AND BROKEN PROMISES

Our first set of document demands was due on October 14, 2024. Plaintiffs produced NOTHING on that date. I wrote to ask Mr. Gebski when we could expect a production. (**Exhibit C$_1$** ).

Mr. Gebski responded that he was "on trial this week," and that he will "provide all requested discovery by Monday, October 28th" (**Exhibit C$_2$**).

Then on October 24th, Mr. Gebski wrote to me "As to the date of my production, would November 12 work for you?" (**Exhibit C$_3$**).

On November 12th, I received an email from Mr. Gebski saying, "I am preparing the discovery production and will be sending it today." (**Exhibit C$_4$**).

NOTHING was sent to me on November 12th.

On November 13th, I wrote again to ask when I could expect the document production. (**Exhibit C$_5$**).

On November 13th, Mr. Gebski wrote back to me "I am currently marking the documents and will be sending them today. (**Exhibit C$_6$**).

NONE of the 66 document requests in the first two sets of document demands were responded to on November 13th, and NONE of the 48 interrogatories were responded to.[1]

Later on November 13th, I wrote to Mr. Gebski, commenting on his lack of response to the 66 document demands contained in the first two sets of demands and his complete lack of responses to every interrogatory. (**Exhibit C$_7$**). On November 14th, I again asked if he could provide me with a date certain as to when he will complete his document production, and when he will provide me with responses to my interrogatories. (**Exhibit C$_8$**).

On November 14th, Mr. Gebski wrote back "I am working on it now. Will be sending more discovery shortly, and continue production as/if more info becomes available." (**Exhibit C$_9$**).

Mr. Gebski also said, "I have not received any interrogatory requests from you."

See **Exhibit D$_1$**, the transmittal email of my first set of interrogatories dated September 30th, and **Exhibit D$_2$**, the transmittal email for my second request for an interrogatory, dated October 17th. It should be mentioned that I had written to this Court to ask for permission to serve this last interrogatory and of course Mr. Gebski was noticed on all communications to the Court.

**Exhibit D$_3$**, dated November 14th, is the transmittal email for a duplicate set of interrogatories sent to Mr. Gebski on that date.

On November 14th, I again asked Mr. Gebski if he could provide me with a date certain as to when he will complete his responses to my discovery demands. (**Exhibit C$_{10}$**).

On November 15th, Mr. Gebski wrote back "you should receive the rest of the document productions on Monday morning" [November 18th], and the replies to your interrogatories as well." (**Exhibit C$_{11}$**).

Suffice it to say, NOTHING was provided on November 18th.

I wrote to Mr. Gebski again on November 18th, asking once again, "Are you able to give me a date certain as to when you will produce?" (**Exhibit C$_{12}$**).

---

[1] Mr. Gebski did purport to answer the 6 demands contained in document requests 3 & 4, but his entire production had previously been received by me, as attachments to his letters to the Court. He produced **nothing** new.

I next heard back from Mr. Gebski on November 18th. He said, with regard to "specific document production requests," that he is "fly[ing] to Florida to meet with Mark, and together complete the answers." (**Exhibit C$_{13}$**).

I have gotten NOTHING.

Mr. Gebski also promised to get me answers to interrogatories "by Wednesday" [November 20th].

On November 21st, I wrote to Mr. Gebski, complaining that I had not received ANY responses to our interrogatories. (**Exhibit C$_{14}$**).

On November 21st, Mr. Gebski sent me purported responses to just 25 of the 48 interrogatories, and they were not signed nor verified by Mr. Kwoka.

On November 22nd, I wrote to ask that these responses be resubmitted with a proper verification (**Exhibit C$_{15}$**). This request has been ignored.

Also on November 22nd, I wrote to complain to Gebski that he'd purported to answer only 25 of my 48 interrogatories. I explained that the statute permits me 25 interrogatories for EACH PLAINTIFF, not 25 in total. (**Exhibit C$_{16}$**).

Mr. Gebski has *still* failed to answer any of the remaining 23 interrogatories.

On December 3rd, I again wrote to Mr. Gebski, asking when he is expecting to answer my discovery requests. (**Exhibit C$_{17}$**).

I asked to speak to Mr. Gebski on the phone, to try to resolve our discovery issues.

Mr. Gebski asked me for a further extension to December 15th.

I responded that I would only agree to a further extension if it were contained in a stipulation "So Ordered" by our Judge. I pointed out that he had never complied with any of the extensions that I had given him, and that any further extensions had to be pursuant to a Court Order.

I also requested that he agree to negotiate terms for an ESI protocol, so that I could be assured that any extended date for production would be fully met.

Mr. Gebski refused both of my terms; but he promised to make a full production within 48 hours, if I would hold off making my application to the Court for permission to make a Motion to Compel.

The next day, December 5th, Mr. Gebski wrote to this Court asking for "a 45-day continuance to complete discovery," and had the temerity to state that "This is Plaintiffs' first request for an extension."

## THE "DUMP"

Please refer to the accompanying Declarations of Deeban Siva, Esq., and Nicholas Edelstein, for the details surrounding this incident.

Summarily, on November 18th, Mr. Gebski sent me several "WeTransfer" files, which he represented to comprise the entirety of the documents needed to satisfy all of my document demands.

I could not open any of the files.

I reached out to two men who work for our firm, who are known to me to be particularly tech savvy (which I am definitely not).

These men, as their accompanying Declarations attest, put in a multitude of hours trying to open these files (obtaining new apps to run them through and other "work arounds"), and talking to Mr. Gebski to obtain his advice. In addition to reading Mr. Edelstein's Declaration, please also see his email of November 20th (**Exhibit E**) which details just some of the effort he had to go through.

Mr. Siva found out from Mr. Gebski that these files consisted of the total inboxes for several custodians, without any filtering for whether or not the documents were relevant to any of our demands. In all, we received more than 15,000 emails, which were not indexed in any way.

Moreover, we could not print out any of the documents. As Mr. Edelstein notes, the files were sent as "OST," and to be compatible with our platform, they must be sent as PST.

Later, Mr. Gebski resent the smallest of the WeTransfer files, claiming that he had converted it to PST, so that we should be able to open it. But we couldn't open up these PST files because they were exported from a Mac, and were too big for a Window's converter to process.

None of the 15,000 emails were Bates Stamped, and none of these emails were specified to be responsive to any particular document demand.

This was not a production; this was a "dump."

And we ask this Court to make a determination that Plaintiffs have **not** satisfied any of our document demands.

## REQUESTS FOR RELIEF

1) That Plaintiffs be required to engage an e-discovery vendor, and that all of his emails and texts be put on that platform; and that the parties be required to negotiate an ESI Protocol.

This would ensure that all documents that are responsive to the protocol would be produced in a timely and efficient manner.

On November 25th, Mr. Gebski indicated that he had reached out to Everlaw Software to set up a platform for e-discovery. (**Exhibit F**).

I have never heard anything more about this since, and apparently, he has abandoned this effort.

Defendant respectfully requests that it be mandated that Plaintiffs be required to set up a platform for e-discovery.

Three months have expired since discovery began, and to date, I have not received a single document in response to my 66 document demands. Plaintiff says that his database of 15,000 documents is so voluminous for him to wade through, and that he should be granted a long term extension to complete his document production.

We respectfully suggest that setting up an e-discovery platform would enable a speedy and accurate document production, and that a further extension of the time for Plaintiff to make his production, should not be necessary.

2) That Defendant be awarded sanctions in the form of reimbursement for her attorney's fees that she incurred, that are attributable solely to the malfeasance of Plaintiff in regards to his production obligations required by Your Honor's Order of September 11, 2024; and his failure to comply with his discovery obligations mandated by the FRCP.

3) That Plaintiffs be required to produce the vendor-generated invoices, and the DHL original invoices, to substantiate every expense claimed on the 2023 tax returns, **by a date certain**; and that the failure to comply with this date would carry a serious consequence.

4) That Plaintiffs be required to engage an e-discovery vendor, and set up an e-discovery platform **by a date certain**; and that the failure to abide by this date would carry a serious consequence.

Respectfully submitted,

_Elaine Platt_

Elaine, Platt, Esq., Of Counsel
**Jones Law Firm, P.C.**
5 Tudor City Place
New York, NY 10017
(212) 258-0685
elaine@joneslawnyc.com
*Attorneys for Defendant*

The parties are hereby ORDERED to appear for an in-person conference with the Court on Monday, December 16, 2024, at 3pm in Courtroom 15A, 500 Pearl Street, New York, NY 10007. Lead trial counsel must attend.

SO ORDERED.

_signature_

Arun Subramanian, U.S.D.J.
Date: December 11, 2024