Arun Subramanian, US District Judge
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 15A
New York, NY 10007
(212) 805-0238
subramanianNYSDChambers@nysd.uscourts.g

Jones
Law Firm P.C

April 6, 2025

***Via ECF***

Re: 1:24-CV-02246 *Kwoka, et al v. D'Angelo*

Dear Honorable Judge Subramanian,

I write to inform the Court that Mr. Gebski did not respond to any of my six discovery demands; and to ask for discovery sanctions in the form of preclusions and negative inferences.

Mr. Gebski did purport to provide a bunch of electronic folders, but they couldn't be opened ("Access Denied"); were in no way referenced to any specific demand; and these were the same folders that he previously sent on November 18, 2024, and I wrote to Mr. Gebski back then, complaining that the files couldn't be opened.

- Attached to this letter (Exhibit A), are my six demands.
- Attached (Exhibit B), are Mr. Gebski's written responses.
- Attached (Exhibit C), are the electronic folders that Mr. Gebski purports to be document productions.

## FAILURE TO PROVIDE CALCULATION OF DAMAGES

The first demand asks:

- "How do you compute your more than $3 million in claimed damages?"
- Provide any evidence to substantiate your claim.

This is Mr. Gebski's response:

- "Enclosed are financial records for Philmar Trading Corp, where Mr. Kwoka is a 50% shareholder. Mr. Kwoka devoted 50% of his time to Esme Designs, which prevented him from growing his other businesses or pursuing other ventures."
- "Ryan Dougherty, our financial expert, will testify as to Mr. Kwoka's damages at trial."

This is an inadequate response.

Mr. Gebski seems to be saying that Mr. Kwoka should be awarded as damages, an amount equal to the value of Mr. Kwoka's time that he devoted to Esme Designs.

Mr. Gebski doesn't state why Mr. Kwoka should be entitled to this measure of damages; nor what Ms. D'Angelo did to harm him.

Mr. Gebski seems to be saying that the value of Mr. Kwoka's time should be determined by reference to the Philmar financials, which he purports to attach. But in fact (see the Affidavits of Aaron Sullivan and Nick Edelstein), the folders labeled "Philmar Tax Return," and "Philmar Trading Corp" could not be opened, ("Access Denied").

Mr. Gebski's reference to testimony about Mr. Kwoka's damages that will be provided in the future, (at trial), which doesn't even contain a proffer of what will be said at trial, does not satisfy the standards for a pre-trial discovery response.

## FAILURE TO PROVIDE EVIDENCE THAT PROVES THE EXISTENCE OF AN ORAL OPERATING AGREEMENT FOR ESME DESIGNS

Mr. Gebski responded, "in the absence of a written agreement, business venture oral agreements are implied"; and then goes on to say, "the parties affidavits, trial testimony, email, phone, and various messenger correspondence shall serve as additional evidence of their business relationship."

Previously, Mr. Gebski did provide a transcript of a phone call on January 30, 2024, between Mr. Kwoka and Ms. D'Angelo, in which Kwoka wanted to

terminate D'Angelo's interest in Esme Designs, and a copy of follow-up text. No other correspondence between the parties was provided then, and nothing additional is provided in the response to the current demand.

Mr. Gebski's mention of future affidavits and future trial testimony (with no description of what the contents will be) does not satisfy the standards for a pre-trial discovery response.

### FAILURE TO IDENTIFY THE SERVICES PERFORMED BY KWOKA AFTER JULY, 2019, FOR OTHER COMPANIES IN THE BRIDAL INDUSTRY

In response to this very narrow question, Mr. Gebski deflects by describing Mr. Kwoka's experience over the past 30 years the in the "production and manufacturing sector of the bridal grown industry."

With regard to the narrow time period after July, 2019, Mr. Gebski does not relay the services that Kwoka DID perform, as was specifically asked, but instead lists three services that he has not performed. Mr. Gebski says "Mr. Kwoka has not participated in the design, distribution, or sale" of any other bridal garment brand. Mr. Gebski does not mention whether Mr. Kwoka is providing production and manufacturing services for competing bridal garment brands, and indeed, is trying to mislead as to this fact.

### FAILING TO PROVIDE EVIDENCE THAT THE BOOTH'S RENTAL FEE FOR THE NATIONAL BRIDAL TRADE SHOW HELD IN CHICAGO IN MARCH, 2024, WAS PAID FOR BY ESME DESIGNS

Mr. Gebski refers to a previous production, MKES3522-3535, and says that this "confirms the payment." This production is attached (Exhibit D), and in no way confirms that any payment was made by Esme Designs. To the contrary, it confirms that Ms. D'Angelo paid personally for the booth.

Mr. Gebski says, "see the November 2023 Bank of America account statement showing payment of $5,050.00 for the Chicago Market." But this statement does not appear anywhere in Mr. Gebski's production.

Mr. Gebski also says, "see the February 2024 Citibank credit card statement showing the final payment for the Chicago Market." Again, this credit card statement was <u>not</u> produced. Nor is it made clear whose credit card statement Mr. Gebski is referring to; is it an Esme Designs credit card account, or Ms. D'Angelo's personal account?

Mr. Gebski also says, "see the November 2023-February 2024 Bank of America statements showing Esme reimbursement payment to the Citibank credit card." Again, no Bank of America statements were provided.

### FAILING TO PROVIDE EVIDENCE THAT THE PARTIES "VERBALLY AGREED" TO SPLIT THE CHICAGO BOOTH <u>"75% TO MR. KWOKA, AND 25% TO MS. D'ANGELO"</u>

Mr. Gebski refers to a previous production made in March of 2024, MKES3522-3535. (See again Exhibit D). These are emails between Mr. Kwoka and Jane Heflin, the manager of the bridal show. These emails do not evidence a "75/25" booth-split arrangement.

Mr. Gebski again makes reference to his prior production of the transcript of the January 30, 2024 phone call between Mr. Kwoka and Ms. D'Angelo, and alleges that this transcript (attached as Exhibit E), "clearly addresses the Chicago show participation plans."

Clearly it does not.

The only new production made were three attachments: two of them were the beginning and end of one phone call between Mr. Kwoka Jr. and Ms. D'Angelo (attached as Exhibit F) and it in <u>no way</u> shows any agreement for the booth to be divided 75/25. The third attachment was SMS messages between Mr. Kwoka Jr., Ms. D'Angelo, and Candace Sandy (Exhibit G), and speaks about dress designs. It is not at all relevant to the Chicago trade show.

## FAILURE TO SHOW WHEN, WHERE, AND HOW
## THE "SHOP ESME" URL WAS OBTAINED

Mr. Gebski says that "the purchase receipt for the requested domain" is "enclosed."

The receipt was never produced.

## AFFIRMATIONS OF AARON SULLIVAN AND NICK EDELSTEIN

Mr. Sullivan and Mr. Edelstein handle the IT for Jones Law Firm, and I asked them to look at Mr. Gebski's production (which seemed mostly to be in digital format).

Mr. Sullivan's affidavit says that Mr. Gebski's response to Demand #1 (referring to damages) provides links to twelve Google Drive folders; Esme Designs tax returns for years 2019, 2020, 2021, 2022, and 2023; Philmar's tax return for year 2023 (only); Philmar's P+L's for years 2021, 2022, and 2023; and K-1 forms for Ms. D'Angelo and Philmar.

Mr. Sullivan states that when he tried to click on these links to actually view these documents, he received an "Access Denied" message from Google Drive.

Mr. Sullivan describes his efforts to locate the documents referred in Mr. Gebski's response to Demand #2 (about the oral business agreement between the parties). Mr. Sullivan notes that Mr. Gebski mentions that he would be providing emails and messenger correspondence to prove the nature of the business relationship between the parties. Mr. Sullivan states that in an attempt to locate this correspondence, he looked at the folders denominated "Business Communications 1, Business Coms.2," and "Business Coms. 3". Mr. Sullivan states that when he tried to access these folders, he was presented with an "Access Denied" message.

Mr. Sullivan states that there were SMS messages attached that he could open. But their content seems to be solely about making modifications to dress designs and Mr. Sullivan didn't see how this was relevant to any of our demands.

Mr. Sullivan noted that in his response to Demand #5 (about the "75/25" agreement to split the booth at the Chicago Trade Show), Mr. Gebski's mentions

an audio recording with Ms. Kassey Lauer. Mr. Sullivan states that he could not find this recording anywhere in Mr. Gebski's production.

Mr. Sullivan notes that in Mr. Gebski's response to Demand #6, he mentions that he has enclosed a purchase receipt for the "Shop Esme" URL. Mr. Sullivan says he searched through all of the Google Drive links provided, and could not find this receipt anywhere.

Mr. Edelstein's affidavit attests to the fact that Mr. Gebski's entire so-called "production," referred only to documents contained somewhere in a previous 25,000+ page production (no Bates stamp numbers, or any other ways of locating them were mentioned), or to a "new" group of 16 files, none of which could be opened (they all said "Access Denied). Mr. Edelstein describes his several attempts to request access to these files, but his requests were ignored.

It should be noted that Mr. Gebski sent us the same 16 folders in November of 2024, and we couldn't open them then. (See attached Exhibit H, correspondence sent on November 18, 2024, showing some of the same folders that were reproduced on April 1, 2025, and our complaint back in November of 2024, that these same folders could not be opened then).

### REQUEST FOR EXCLUSION OF UNDISCLOSED EVIDENCE ON THE ISSUE OF DAMAGES

Federal Rule of Civil Procedure 26(a)(1)(A)(iii) requires that a computation of each category of damages claimed, must be provided, along with supporting documentation.

Rule 37(c)(1) provides for the exclusion of any undisclosed evidence.

In *MLC Intellectual Property v Micron Technology*, 10 F4th 1358 (2021), the Ninth Circuit upheld the district court's decision to preclude the plaintiff's damages expert from testifying. In that case, as here, the plaintiff had failed to produce key documents, and sought to present its case for damages through the testimony of an expert at the trial.

I pray for this Court to preclude the testimony of Plaintiffs' expert witness, both by affidavit in support or opposition to a Summary Judgment motion, and at any ensuing trial.

I pray for this Court to preclude the Plaintiffs from submitting *any* evidence of damages in support or opposition to a Summary Judgment motion, or at any trial, because of Plaintiffs' failure to comply with Rule 26(a) and (e). The non-disclosure here is particularly egregious, as damages are an essential component of the causes of action in the Complaint.

The Plaintiffs have been given many months (at least 8 months) to provide this information, and the failure to provide this evidence is not justified.

## REQUEST FOR AN ADVERSE INFERENCE

On September 23, 2015, the Second Department issued a decision in *Schiano v Mijul, Inc.*, 2015 NY Slip Op. 06910, affirming an adverse inference discovery sanction, because "the documents in question exist or existed and were under [the sanction party's] control, and … there was no reasonable explanation for their nonproduction.

Similarly, in *Carey v Shakriazar*, 2020 Slip Op 51040 (NY. S. Ct. Comm'l Div, 2020), the court held that a party should be subject to an adverse inference regarding evidence it failed to produce.

## CONCLUSION

I plead to this Court, that the Plaintiffs be precluded from introducing any evidence as to the existence of an oral operating agreement for Esme Designs, LLC; as to the payment for the booth at the Chicago Bridal Trade show in 2024; and as to the party's alleged agreement for sharing the booth[1];

---

[1] We acknowledge receipt of the transcript of the January 30, 2024, phone call between the parties; and we acknowledge receipt of MKES 3522-3535. But with these sole exceptions, we ask for the preclusion of all evidence on these three issues.

I plead to this Court that the Plaintiffs be precluded from introducing any evidence as to its damages;

And, that an adverse inference be had as to all of the evidence that was not produced.

The motion is DENIED for failure (again) to comply with this Court's individual practices, including to meet and confer with opposing counsel on issues like these. In any event, the motion would be denied anyway. Defendant raises some serious disclosure issues with respect to the plaintiff's case. But the Court will determine the appropriate remedy upon reviewing the parties' summary judgment motions. If plaintiff has failed to identify, as required by Rule 26, witnesses, documents, or damages calculations that it intends to rely on at trial, that evidence will not be considered in deciding whether plaintiff can avoid summary judgment. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 118.

Respectfully submitted,

Elaine, Platt, Esq., Of Counsel
**Jones Law Firm, P.C.**
5 Tudor City Place
New York, NY 10017
Office: (212) 258-0685
Direct: (646) 602-1489
elaine@joneslawnyc.com
*Attorneys for Defendant*

SO ORDERED.

Arun Subramanian, U.S.D.J.
Date: April 7, 2025