UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Mark J. Kwoka et al.,

                Plaintiffs–Counter Defendants,

                -against-

Diane D'Angelo,

                Defendant–Counter Plaintiff.

24-cv-2246 (AS)

OPINION AND ORDER

ARUN SUBRAMANIAN, United States District Judge:

    This case involves a dispute over the ownership of a wedding-dress company. The parties cross-moved for summary judgment on plaintiffs' claims, and defendant moved for sanctions. For the reasons below, plaintiffs' motion for summary judgment is DENIED and defendant's motion for summary judgment is GRANTED. Defendant's motion for sanctions is DENIED.

## BACKGROUND

    Mark Kwoka and Diane D'Angelo met at a New York trade show for wedding dresses (the parties dispute whether this was in 2018 or 2019). Dkt. 130 ¶ 2; Dkt. 133-2 ¶ 1. D'Angelo at the time marketed her dresses under the brand name "Lasting Memories." Dkt. 133-2 ¶ 3. After they met, the two worked together to sell dresses under the name "Esme Designs." Dkt. 130 ¶¶ 2–4; Dkt. 133-2 ¶ 3. D'Angelo designed the products, while Kwoka handled production. Dkt. 133-2 ¶ 2.

    Esme Designs LLC was organized under the laws of the State of Florida by Kwoka in July 2019. Dkt. 130 ¶ 3; Dkt. 133-2 ¶ 5. D'Angelo was listed as the "Manager" of the company. Dkt. 133-2 ¶ 6.

    In January 2024, Kwoka told D'Angelo he wanted to end their business relationship. Dkt. 130 ¶ 5; Dkt. 133-2 ¶ 17. Kwoka asked D'Angelo to transfer her interest in the business to him and to cease doing any business under the Esme Designs name. Dkt. 133-2 ¶ 17. Two weeks later, Kwoka sent D'Angelo a "Memorandum of Understanding" detailing his buyout proposal. Dkt. 130 ¶ 8; Dkt. 133-2 ¶ 21.

    Following her receipt of Kwoka's proposal, D'Angelo consulted legal counsel, who wrote to Kwoka and demanded that he stay away from Esme Designs' bank account and accounting software. Dkt. 130 ¶ 10; Dkt. 133-2 ¶ 23. Kwoka claims a 50% interest in Esme Designs; D'Angelo believes she owns the business outright. Dkt. 130 ¶ 4; Dkt. 127 at 5.

    In March 2024, Kwoka organized Esme Private Label LLC under the laws of the State of New York. Dkt. 138-2 at 6. He subsequently initiated this lawsuit against D'Angelo, listing the new

LLC as a co-plaintiff. Dkt. 1. The amended complaint alleges breach of fiduciary duty, equitable estoppel, several contractual claims, and fraud. Dkt. 7. D'Angelo counterclaimed for conversion, tortious interference with business relationships, and for a declaratory judgment on ownership. Dkt. 54. The parties filed cross-motions for summary judgment on plaintiffs' claims, and D'Angelo moved for sanctions under Federal Rule of Civil Procedure 11. Dkts. 125, 128, 140. Plaintiffs did not move for summary judgment on any of D'Angelo's counterclaims.

## LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if a reasonable jury could find for either side. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is "material" if it could "affect the outcome." *Id.* The Court views the record "in the light most favorable to the non-movant." *Williams v. MTA Bus Co.*, 44 F.4th 115, 126 (2d Cir. 2022) (cleaned up). But if the non-movant will bear the burden of proof on an issue at trial, it must point to some evidence supporting the "essential element[s]" of its position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## DISCUSSION

### I. The Court looks to Florida's default rules to determine ownership of Esme Designs LLC

The parties in this case agree on very little. They do not agree on *whether* the Court should decide who owns Esme Designs LLC. They do not agree on *how* to decide who owns the entity. And they certainly do not agree on *who* owns Esme Designs LLC. For the following reasons, the Court concludes that ownership is a necessary question in resolving the claims at issue on the cross-motions and determines that Florida LLC law, rather than principles of estoppel, determine ownership.

### A. The ownership of Esme Designs is a necessary question to resolving the parties' motions

The first question is whether the Court should resolve the ownership of Esme Designs LLC. Plaintiffs argue that the ownership question is relevant to resolving the claims. *E.g.* Dkt. 139 at 4–5. D'Angelo disagrees, believing that plaintiffs did not assert a claim for ownership and thus the matter is outside the scope of the pleadings and cannot be resolved on summary judgment. Dkt. 135 at 2–3.

The Court agrees with plaintiffs that the ownership of Esme Designs LLC is within the scope of the case and ripe for resolution on summary judgment. Plaintiffs' claims, which are the subject of the cross-motions, rest on their understanding of the ownership of the entity. For example, plaintiffs' claim for breach of fiduciary duty necessarily rests on the assumption that Kwoka has an ownership stake in the company—if he did not, he has no theory as to why D'Angelo would owe

him and his LLC a fiduciary duty in the first place. The question of Esme Designs LLC's owner-ship is within the scope of this case and the pending motions. And it is procedurally proper to address that question now. After the cross motions were filed, neither side suggested that there was any reason—for example under Fed. R. Civ. P. 56(d)–(f)—that the issue could not be resolved on the present record.

### B.   The Court applies Florida law to determine ownership of the entity

The next question is how to determine ownership of Esme Designs. Plaintiffs argue that D'An-gelo is estopped from claiming that Kwoka lacks an ownership stake in Esme Designs LLC. Dkt. 129 at 8–9. D'Angelo argues that estoppel does not apply, and the Court should instead apply default principles from Florida or New York law. Dkt. 135 at 4–8. The Court agrees with D'Angelo and applies Florida law.

Plaintiffs' argument borrows elements of different estoppel doctrines, but their argument boils down to this: Esme Designs LLC's tax returns listed a company, Philmar Trading Corporation, apparently owned by Kwoka, and D'Angelo as 50/50 owners in a partnership, and so D'Angelo should be estopped from claiming that Kwoka isn't an owner of the company. The Court disagrees.

As one of plaintiffs' cases states, "[w]ithin the Second Circuit, the 'application of judicial es-toppel is limited to situations where the risk of inconsistent results threatens the integrity of the judicial process.'" *Am. Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*, 704 F. Supp. 2d 177, 194 (E.D.N.Y. 2010) (quoting *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 72–73 (2d Cir. 1997)). In *American Manufacturers*, the question was whether a party was taking an inconsistent position on the categorization of some transactions in litigation (to gain an advantage over the adverse private party) compared to how it had represented those transactions to the IRS (to reduce tax liability). *Id.* at 194–201. In effect, the *American Manufacturers* court held that a party cannot have its cake and eat it too.

No such unfairness exists here. Before getting into the facts, it's important for the reader to understand the state of the record on summary judgment. It appears that no depositions were taken in the case, and the record is chock-full of evidence that is clearly inadmissible, useless, or both. First, there is a declaration from a third-party CPA saying that he was "informed" that Philmar and D'Angelo were 50/50 owners in Esme Designs LLC. Dkt. 129-11. As the Court notes below, Kwoka does not supply any evidence of Philmar's ownership. But setting that aside, the Court is left to speculate as to who informed the CPA, and even if that were clear, the declaration would likely be inadmissible hearsay. Next, there's Kwoka's argumentative "declaration" in opposition to D'Angelo's motion, a Festivus-style airing of grievances against D'Angelo and her lawyers containing little that would be both admissible and probative. Dkt. 138-2. There are no emails, except for a couple referenced below. While this might be surprising in any other cases, it's par for the course in this one, where the parties on both sides have shown little regard for the facts, the law, or the procedures applicable in federal court.

Back to the facts. First, the tax returns that plaintiffs rely on don't say that *Kwoka* is a 50% owner of Esme Designs LLC. Instead, they reflect the ownership of Philmar, which isn't a party

to this case at all. That's a fatal defect. But even if the Court *could* look through that corporation to locate Esme's ownership in Kwoka based on his ownership of Philmar—which plaintiffs' briefing asks the reader to assume—there's no admissible evidence that he is the owner, or any information about Philmar whatsoever. Plus, plaintiffs have not pointed to any material benefit D'Angelo received from having the tax returns list Philmar as co-owner, undermining their estoppel argument. One could imagine what those benefits might be, but plaintiffs just ignore the issue entirely.

Second, there are two email chains. One is from 2024, when a dispute had already arisen between the parties; indeed, some of the emails are from *after* this lawsuit had commenced. Dkt. 129-8. Unsurprisingly, the chain doesn't include any statement from D'Angelo that Kwoka owned 50% of the company; at most, in one of the emails, the *CPA* suggests that *if* he files the return for 2023, he would identify Philmar (not Kwoka) as 50% owner and D'Angelo as 50% owner. D'Angelo's cryptic response of "You can send to me what the account needs / you should have the email regarding this" doesn't get plaintiffs anywhere (indeed, even the CPA comments that he has no idea what D'Angelo is referring to). And the CPA further notes that he had "not received any corporate governance related to the year 2023 or 2024," which obviously isn't the stuff of estoppel. As for the second email exchange from 2022, it purportedly attaches a draft 2021 tax return, which D'Angelo responds by saying "Look [sic] fine to me." Dkt. 129-10. The email exchange doesn't reference the ownership split, and indeed, the exhibit doesn't have the draft tax return attached to it, so the probative value of this evidence is limited.

Third, plaintiffs rely heavily on the transcription of a recorded call between Kwoka and D'Angelo from January 2024. Dkt. 129-1. Putting aside the admissibility of this exhibit, and whether the recording of the call was authorized by law, the call involves Kwoka indicating that he wants to end the "partnership" and the parties' discussion of what that might entail, with very little being said by D'Angelo. The parties don't address the parameters of the LLC's ownership, or what the arrangements were between Kwoka and D'Angelo. That is, did Kwoka and D'Angelo each own part of the company? How much? Was Kwoka financing the company or facilitating the production of dresses and receiving an informally agreed return on his investment of time and resources, with formal ownership vested in D'Angelo? Because there are no depositions where anyone was asked about the call, there's nothing to help the Court sort it out. And in any event, the call was made when the dispute regarding this case had already materialized, and no deal was struck on the call. Indeed, the proposal made by Kwoka after the call was never accepted. So it's unclear how the call could be grounds for any kind of estoppel.

Without estoppel, this Court applies Florida LLC law to determine the ownership of Esme Designs LLC. As the LLC was organized under that state's law, the Court concludes that it must look to its law to determine who owns the entity.

## II.   Applying Florida law, the Court concludes that D'Angelo owns Esme Designs LLC outright

### A.  Kwoka could become a member only with D'Angelo's consent

Neither party appears to cite the existence of any operating agreement that would shed light on the question of who the members of the LLC are.[1] In the absence of such an agreement, Florida's statutory law governs. *See* Fla. Stat. § 605.0105(2) (noting that Chapter 605 governs the operations of LLCs where an operating agreement does not).

In the absence of an operating agreement, a Florida LLC is member-managed. Fla. Stat. § 605.0407(1); *Akerman LLP v. Cohen*, 352 So. 3d 331, 338 (Fla. Dist. Ct. App. 2022) ("Unless the operating agreement or articles of organization expressly provides the company is or will be manager-managed, the company is member-managed."). And in a member-managed LLC, "[e]ach member's vote is proportionate to that member's then-current percentage or other interest in the profits of the limited liability company owned by all members." Fla. Stat. § 605.04073(1)(b); *see also Ackerman*, 352 So. 3d at 338 (quoting *id.*). In short, the members and the individuals authorized to manage the company are one and the same for a Florida LLC without an operating agreement, with voting rights proportional to ownership stakes. And with exceptions not relevant here, a person can only become a member after formation pursuant to the operating agreement (which didn't exist) or with the consent of all then-existing members. Fla. Stat. § 605.0401(3)(a), (c).

Upon formation, D'Angelo was listed as the sole individual authorized to manage the LLC. Dkt. 42-3 at 3. Although the articles of organization do not list the *members*, the Court again notes that the lack of an operating agreement means that all members—and only members—would be authorized to manage the company. Fla. Stat. § 605.0407(1). Since it was Kwoka himself who filed the documents organizing the company, *see* Dkt. 42-3 at 3, he was, under Florida law, stating that D'Angelo, and only D'Angelo, was a member of the LLC.

Plaintiffs attempted to point to another Florida LLC they represent is owned by Kwoka, but whose sole manager is plaintiffs' counsel, as evidence that managers and owners may be separate. Dkt. 148. While true, such an arrangement would have to be pursuant to an operating agreement. *See* Fla. Stat. § 605.0105. As there is no evidence of any operating agreement with respect to the LLC currently before the Court, default principles under Florida law would apply, making D'Angelo the sole member of the LLC at the time of formation.

### B.  Kwoka points to no evidence that D'Angelo ever consented to his addition as a member

So, at formation, D'Angelo was the sole member of the LLC. Thus, the question resolves to whether D'Angelo consented under § 605.0401(c) at some point after formation to the addition of

---

[1] The Court uses "member" and "owner" interchangeably. *See, e.g.*, *United States v. Tardon*, 493 F. Supp. 3d 1188, 1246 (S.D. Fla. 2020) ("A member of a Florida limited liability company is an owner.").

Kwoka as a member. And even with the most deferential view, Kwoka has not demonstrated a genuine dispute of material fact over whether the requisite consent was ever given.

Plaintiffs point to a few things to try to demonstrate that he was an LLC member, but they fail to create a genuine dispute of material fact over the critical question of D'Angelo's consent. The first thing that plaintiffs cite is, of course, the tax returns. But since the tax returns were created by Kwoka's accountant based on information Kwoka provided, Dkt. 133-2 ¶ 7, that does not demonstrate that D'Angelo ever consented to his addition as a member. And remember that the tax returns don't show Kwoka as owning 50% of the LLC anyway. That ownership is vested in Philmar, a non-party to this case as to which no information has been furnished by plaintiffs. While the tax returns might be probative of the fact that Kwoka may have believed he owned half of the company long before this litigation, that does not mean that it was ever true under Florida law.

Second, plaintiffs point to the transcript of the January 2024 phone call between Kwoka and D'Angelo where they discuss the dissolution of their business relationship. In that call, the two of them discuss how to "split it up." Dkt. 129-1 at 4. But passing mentions to a "split" do not indicate that D'Angelo gave consent to Kwoka being a member. An employer might discuss a "split" with an employee or financier, even if the employee or financier has no ownership stake in the company. And having reviewed the transcript, the Court sees nothing that creates a genuine dispute of material fact over the issue, especially with no context being provided through deposition testimony addressing any statements made on the call.

In fact, Kwoka's own declaration nowhere mentions that he ever received D'Angelo's consent to become a member. Dkt. 138-2. Instead, he maintains that he has been a 50% owner since inception—an argument that conflicts with Florida law's treatment of the organizing document that he created. *Id.* at 3.

Moreover, D'Angelo has averred without contradiction that she personally paid the startup costs for Esme Designs, totaling $58,000, while Kwoka did not contribute any capital. Dkt. 133-2 ¶¶ 11–12. Kwoka claims only that he paid a filing fee to register the LLC with the State of Florida. Dkt. 138-2 at 6. While not conclusive, the lack of any meaningful financial contribution supports the Court's holding that Kwoka failed to demonstrate a genuine dispute of material fact over his ownership.

In short, Kwoka points to no evidence anywhere in the record—not even his own declaration—that D'Angelo ever gave her consent to his addition as a member of the LLC. No emails, no deposition testimony, no declarations. Since it appears that Kwoka never deposed D'Angelo, he cannot point to any of her statements under oath that would point the other direction. And the financial situation during the formation of the company suggests that D'Angelo did not intend for Kwoka to be a member either.

Since all of plaintiffs' claims rest on the assumption that Esme Designs was their "joint" company, the Court GRANTS D'Angelo's motion for summary judgment on all of plaintiffs' claims and DENIES plaintiffs' motion for partial summary judgment.

6

### III.    The Court gives notice that D'Angelo's declaratory judgment counterclaim may not be in dispute

Although neither plaintiffs nor D'Angelo moved for summary judgment on her counterclaims, the Court notes that her declaratory judgment counterclaim may not be in dispute based on the foregoing analysis. The Court gives notice under Federal Rule of Civil Procedure 56(f) that the parties should, within 14 days of this order, file objections should they believe that summary judgment is not proper on those claims.

### IV.    D'Angelo's motion for sanctions is denied

D'Angelo also moved for sanctions under Federal Rule of Civil Procedure 11. Dkt. 140. She argues that plaintiffs' claims have no basis in law or fact. Dkt. 144 at 11. The Court disagrees and declines to award sanctions.

"Courts have cautioned litigants that Rule 11 sanctions are reserved for extraordinary circumstances." *Park v. Seoul Broad. Sys. Co.*, 2008 WL 619034, at *1 (S.D.N.Y. Mar. 6, 2008). The Second Circuit "ha[s] repeatedly held [that] Rule 11 is targeted at situations where it is patently clear that a claim has absolutely no chance of success." *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) (cleaned up).

Although the Court grants D'Angelo's motion for summary judgment and denies plaintiffs', the Court concludes that this high bar has not been met. As a result, the Court declines to award sanctions.

### CONCLUSION

D'Angelo's motion for summary judgment is GRANTED. Her motion for sanctions is DENIED. Plaintiffs' motion for summary judgment is DENIED.

The Clerk of Court is respectfully directed to terminate Dkts. 125, 128, and 140.

SO ORDERED.

Dated: March 17, 2026
New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge

7